```
IN THE UNITED STATES DISTRICT COURT FOR THE
          EASTERN DISTRICT OF OKLAHOMA

VERONICA THERESA WALLS,        )
                               )
          Plaintiff,           )
                               )
v.                             )     Case No. CIV-14-287-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Veronica Theresa Walls (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on August 3, 1962 and was 50 years old at the time of the ALJ's decision. Claimant completed her high school education with some college and vocational training. Claimant has worked in the past as a certified nurse's aide, waitress, administrative clerk, receptionist, and laborer. Claimant alleges an inability to work beginning July 21, 2011 due to limitations

resulting from hereditary angioedema.

## Procedural History

On August 3, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On February 27, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") John Belcher in Tulsa, Oklahoma. On March 15, 2013, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the decision on May 15, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical opinion evidence; and (2) reaching an unsupported credibility determination.

## Evaluation of the Opinion Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of hereditary angioedema and depression. (Tr. 11). The ALJ also found Claimant retained the RFC to perform light work in that she could occasionally lift/carry 20 pounds and 10 pounds frequently, stand/walk for six hours in an eight hour workday, and sit for eight hours in an eight hour workday. The ALJ also limited Claimant to simple tasks. (Tr. 13). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of mail clerk, agricultural produce sorter, and basket filler, all of which he testified existed in sufficient numbers in the regional and national economies. (Tr. 18). Based upon this record, the ALJ determined Claimant was not disabled from July 21, 2011 through the date of the decision. Id.

Claimant contends the ALJ failed to properly consider the medical opinions of Dr. Chriss Roberts, her primary care physician and Dr. Jane Purser, an allergy and immunology specialist. On November 10, 2011, Dr. Roberts completed a form entitled "Treating Physician Mental Functional Assessment Questionnaire." He stated he was treating Claimant for a mental condition which imposes more than minimal limitations. He diagnosed Claimant with Major Depressive Disorder, suicidal attempts and ideations. Symptoms included crying, sleeping more, and feelings of worthlessness. Dr.

5

Roberts stated Claimant had a poor ability to function on a daily basis because she could not focus or finish simple tasks. (Tr. 502). He completed a similar form on March 14, 2012, stating Claimant was sleeping more in a secluded room, won't come out of the house, has suicidal ideations with attempted suicide through an overdose of Xanax. He described her functional limitations as she was medicated but still depressed with mood swings, crying episodes, feelings of worthlessness, can't focus on the job, can't finish tasks, fearful of driving off people, and can't function in the outside world. (Tr. 537).

On January 31, 2012, Dr. Jane Purser found Claimant suffered from Hereditary Angioedema, a condition described by Dr. Purser as one with which Claimant was born and which results in swelling in various parts of the body, including the throat which can cause death. Dr. Purser stated the condition was very painful and any limitation would depend upon which part of Claimant's body was swollen. If her feet were swollen, it would be painful and difficult to stand. If her hands were swollen, gripping would be difficult. If her throat was swollen, Claimant would experience difficulty breathing. Dr. Purser explained that you never know which area of Claimant's body would be swollen at any time or how long the condition would last. (Tr. 535). Dr. Purser also

completed a medical source statement dated March 26, 2012. She estimated Claimant would be absent from work at least once per week. She found Claimant suffered from a life threatening swelling of the palate and throat which required hospital observation. Dr. Purser explained the condition as a congenital absence of a gene and "although therapics are being worked on currently nothing has controlled [Claimant's] disease." (Tr. 573).

The ALJ stated in his decision that these physicians' opinions "seem to be based on the claimant's subjective complaints." As a result, he gave the opinions "some weight", noting "there is no objective evidence showing the actual frequency of the attacks." He further stated Claimant did not keep a log of the frequency of her flare-ups. The ALJ also found Claimant informed her doctor that she and her retired husband intended to sell their house, buy a fifth wheel, and live at the lake. The ALJ found Claimant was steadily employed until that time. (Tr. 16). The ALJ noted that Claimant reported to the consultative examiner that she spent 12 hours a day for a couple of weeks getting ready for the auction to sell her house. The ALJ relied upon this statement to conclude the frequency of her attacks may not be as bad as alleged. (Tr. 16-17).

As noted by Claimant, the ALJ was presented with a photograph

7

at the hearing which showed Claimant had suffered from swelling of the face three weeks to a month prior to the hearing. (Tr. 42). The ALJ accepted the photograph into evidence. (Tr. 26). During Claimant's hospitalization at Tahlequah City Hospital for psychiatric problems, it was acknowledged that Claimant had generalized edema. (Tr. 256, 258, 263, 266, 269, 274, 277-78, 281-82). Additionally, Claimant experienced abnormally low C1 esterase inhibitor levels in March of 2012 despite increasing her medication to treat the condition. (Tr. 579, 588, 590).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

8

provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ did not engage in the Watkins analysis. He

specifically relied upon his findings that Claimant could not substantiate her flare ups of hereditary angioedema to deny giving Dr. Roberts' and Dr. Purcer's opinions controlling weight. Evidence exists in the record that the condition occurs at irregular intervals but nonetheless occurs resulting in reduced functionality during the periods of increased edema. The ALJ assumed that the two treating physicians simply rendered their opinions based solely upon Claimant's subjective complaints when the medical record offers support for her contention. On remand, the ALJ shall reassess his findings with regard to Dr. Roberts' and Dr. Purcer's opinions. With this unique condition from which Claimant suffers, it may be advisable and necessary for the ALJ to recontact these physicians and obtain further information concerning their opinions. Moreover, the ALJ should consider whether a further consultative examination might be necessary to specifically assess the frequency of Claimant's condition. It is certainly a possibility that the uncertainty of the occurrence of a flare up might well reflect adversely upon Claimant's ability to engage in basic work activity. The ALJ shall consider this possibility in his re-evaluation on remand.

**Credibility Determination**

Claimant also contends that the ALJ failed to adequately assess her credibility since he failed to consider the objective medical evidence which supported her subjective statements concerning her hereditary angioedema. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);

and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

This Court has determined that the ALJ failed to consider the objective medical evidence which supported the occurrence of edema associated with Claimant's documented condition of hereditary angioedema. On remand, the ALJ shall reassess Claimant's credibility in light of this objective medical evidence and consider the factors contained in the regulations on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of August, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE